# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JERI McWILLIAMS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-01-N-2650-S |
| | ] | |
| BRISTOL-MYERS SQUIBB, ET AL., | ] | |
| | ] | |
| Defendants. | ] | |

**Memorandum of Opinion**

### I. Introduction

Before the court is plaintiff McWilliams' motion to remand [Doc. #22], filed May 29, 2002, and defendant Bristol-Myers Squibb Company's motion for limited jurisdictional discovery [Doc. # 37], filed August 1, 2002. Both motions are now ripe for decision. Upon due consideration, the motion for limited jurisdictional discovery will be denied and the motion to remand granted.

### II. Facts[1]

In 1996, McWilliams began treatment at defendant American Family Care ("AFC") for chronic pain. AFC, through its employees or licensed physicians, provided treatment to McWilliams through the use of, *inter alia*, stadol, a prescription drug manufactured and marketed by defendant Bristol-Myers Squibb ("BMS"). She was given stadol from 1996 through early 1998, along with other scheduled prescription drugs for pain. McWilliams became dependent upon, and addicted to, several of these drugs, including stadol. In early

---

[1] The "facts" are assumed for the purpose of the motion to remand. Whether the plaintiff will be able to prove her allegations is a matter left for another time and another court.

1999, because of her drug addiction and dependency, she "began to suffer, and did suffer, such emotional, physical, and psychological and mental changes brought about by said addiction that in March 1999, [she] attempted suicide . . . ." Compl. at ¶ 13. In April 2001, as a result of television and literature produced by bar associations and law firms, McWilliams learned for the first time that stadol is addictive, which contradicted what she had allegedly been told by the employees or physicians of AFC.

On August 15, 2001, McWilliams filed a complaint in the Circuit Court of Jefferson County, Alabama, alleging (1) liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); (2) negligent and wanton development, manufacture, marketing, and prescription of stadol; (3) breach of warranty; and (4) fraudulent suppression and misrepresentation. On October 17, 2001, BMS removed the action to this court, asserting diversity of citizenship as the basis for federal subject matter jurisdiction. On May 2, 2002, McWilliams amended her complaint to add counts of failure to warn in violation of the AEMLD, failure to warn in violation of the common law, and derivative liability on the part of AFC based on the corporate liability theory. On May 29, 2002, McWilliams filed the motion to remand that is presently under consideration. On August 1, 2002, one day after the hearing on the motion to remand, BMS filed a motion for limited jurisdictional discovery.

## III. Discussion

### A. The Motion to Remand

The defendants argue that this court should deny plaintiff's motion to remand because jurisdiction is proper pursuant to 28 U.S.C. § 1332, which provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ." 28 U.S.C. § 1332(a) (2001). McWiliams asserts that complete diversity between the parties is lacking because defendant AFC, which is a citizen of Alabama, is not diverse as to her. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996) (overruled on other grounds) (Complete diversity of the parties is necessary to confer diversity jurisdiction on the district court.). The defendants, however, argue that complete diversity is, in fact, present because AFC, the only non-diverse defendant, was fraudulently joined. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (When a party is fraudulently joined to a law suit, its citizenship cannot defeat diversity jurisdiction.).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998). There are three situations in which joinder is deemed fraudulent, such that the citizenship of the joined party is not considered for diversity purposes. *Id.* The first is when "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Triggs*, 154 F.3d at 1287. The final situation was defined by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996) (overruled on other grounds), and based upon the requirements of permissive joinder under Fed. R. Civ. P. 20: when diverse defendants are joined with non-diverse defendants as to whom there is no joint, several, or alternative liability and the claims against the non-

diverse defendants have no real connection to the claims against the diverse defendants. See *Tapscott*, 77 F.3d at 1360. The defendants argue that the first situation is present in this case. Specifically, they assert that AFC was fraudulently joined because, based on the statute of limitations applicable to claims brought under the Alabama Medical Liability Act, Ala. Code §§ 6-5-480 to -488 (2001) ("AMLA"), there is no possibility that McWilliams can present a viable claim against AFC.

The standard to be applied by this court in resolving a claim of fraudulent joinder was fully addressed by the Eleventh Circuit in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the Court stated:

> The burden of the removing party is a "heavy one." *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549. . . . When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538. The Court continued:

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the

facts involved." *B., Inc.*, 663 F.2d at 550 (quoting *Bobby Jones Garden Apartments*, 391 F.2d at 177) (emphasis added). . . . In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.

*Id.* at 1541-42.

The defendants argue that AMLA is applicable to all of McWilliams' claims against AFC and that the statute of limitations provided by AMLA bars those claims. The provision of AMLA that supplies the statute of limitations for actions filed thereunder, Ala. Code § 6-5-482, provides as follows:

> (a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.
>
> (b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, Sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30, and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action.

Ala. Code § 6-5-482 (1975).

Although McWilliams argues to the contrary, the court finds that, at least as to her

- 5 -

fraud claim against AFC, AMLA is applicable. *See Ex parte Sonnier*, 707 So. 2d 635, 638 (Ala. 1997). However, it is this fraud claim that demonstrates the propriety of remand. The Alabama Supreme Court has noted that, although actions under AMLA are generally subject to the two-year statute of limitations set forth above, part (b) of that limitations provision directly incorporates the tolling provision applicable to fraud actions, Ala. Code § 6-2-3 (1975), which provides:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

*Trammer v. Bernstein*, 596 So. 2d 572, 575 (Ala. 1991). As the Alabama Supreme Court has stated, "[A] plaintiff should be entitled to maintain an action based on fraud or misrepresentation arising out of an act or omission by a physician *as long as that action was filed within two years of the discovery of the fraud or misrepresentation and within four years of the act or omission.*" *Id.* (emphasis in original). As to whether the beginning of the running of the statute of limitations is a question of law or fact, the Court further held that "'[t]he question of when a party discovered or should have discovered the fraud is generally one for the jury.'" *Ex parte Seabol*, 782 So. 2d 212, 216 (Ala. 2000) (quoting *Liberty Nat'l Life Ins. Co. v. Parker*, 703 So. 2d 307, 308 (Ala.1997)).

In the present case, McWilliams has alleged that she "was assured by the physicians and/or other employees at AFC that the stadol was non-addictive." Compl. at ¶ 8. She has further alleged that the defendants "did fraudulently suppress or otherwise misrepresent the addictive and/or dependent propensities of stadol . . . and as a result of such fraudulent

suppression of information concerning stadol, and/or misrepresentation of stadol as being non-addictive," she was injured. *Id.* at ¶ 34. Finally, she has alleged that "[u]ntil April 2001, and after going through various drug rehabilitation programs, the Plaintiff did not know nor had any party named specifically or fictitiously, informed or disclosed to her the addictive propensities of stadol or butorphanol. Only after hearing various media sources, including television and written literature provided by various bar associations and lawyers' firms did the Plaintiff obtain knowledge concerning the addictive propensities of stadol." *Id.* at ¶ 14.

Accepting the foregoing allegations as true, the court cannot say as a matter of law that the statute of limitations for McWilliams' fraud action against AFC began to run when she incurred her alleged injuries in 1999 as a result of her addiction to stadol rather than when she learned, in April 2001, that what the employees of AFC allegedly told her concerning the addictive nature of stadol was false. The court might have resolved the issue differently if stadol was the only medication to which McWilliams became addicted. However, because she has alleged that she was prescribed a "regimen" of scheduled pain medications, many of which she became dependent upon, the court finds it a much closer question as to when she possessed or should have possessed the requisite knowledge to begin the running of the statute of limitations on her fraud claim. At the very least, the court can say without hesitation that the defendants have failed to show that "there is no possibility that the plaintiff would be able to establish a cause of action against" AFC for fraud. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

### B.    The Motion for Limited Jurisdictional Discovery

On August 1, 2002, the day after the hearing on the motion to remand, defendant BMS

moved for limited jurisdictional discovery on the issue of when the plaintiff discovered or should have discovered her addiction to stadol. As noted in part II of this memorandum, this action was filed in state court on August 15, 2001. It was removed to this court on October 17, 2001. A scheduling order was entered on January 17, 2002, providing that discovery should be concluded by December 31, 2002. The court did not stay discovery in this action until May 30, 2002.

As long ago as October 17, 2001, when BMS removed this case, it had to know that the point at which the plaintiff knew or should have known of defendant AFC's alleged fraud is a major issue regarding whether AFC was fraudulently joined. Indeed, the only reason fraudulent joinder is an issue in this case is because BMS raised it as the sole basis of complete diversity of the parties. The court finds that issues relating to jurisdiction should have been investigated long before now, and, after due consideration, finds that BMS's motion for limited discovery is due to be denied.

### IV.    Conclusion

Based on the foregoing, the court finds that the motion to remand is due to be granted and the motion for limited jurisdictional discovery denied. A separate order will be entered in conformity with this memorandum of opinion.

Done, this 5th of August, 2002.

EDWIN L. NELSON  
UNITED STATES DISTRICT JUDGE